**FILED**

**JAN 1 1 2001**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ZOE LITTLEDOVE, an individual,
SALINA YOUNG, an individual on
behalf of themselves, and all
others similarly situated,

                              NO. CIV. S-00-0586 WBS GGH

        Plaintiffs,

        v.                       MEMORANDUM AND ORDER

JBC & ASSOCIATES, INC., a
corporation, MARV BRANDON, an
individual, JACK H. BOYAJIAN,
an individual, DOES I THROUGH
20,

        Defendants.

----oo0oo----

        This is a suit alleging violations of the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the
California Unfair Business Practices Act ("CUBPA"), Cal. Bus &
Prof. Code § 17200, et seq.  Plaintiffs move for class
certification pursuant to Federal Rule of Civil Procedure 23.
See Fed. R. Civ. P. 23.

///

///

///

1

84

1 I.  Factual and Procedural Background

2       Defendant JBC & Associates ("JBC") is a high-volume
3 debt collection agency that utilizes "computer aided auto
4 strategies" to collect debts on returned checks.  Plaintiffs
5 claim that defendants' debt collection methods violate federal
6 and California law.  Specifically, plaintiffs accuse defendants
7 of recovering unauthorized "collection fees," and making unlawful
8 threats in three computer-generated letters.  See (Pls.' Exs. 1,
9 2, & 3).  Each letter was mailed on JBC letterhead naming Marv
10 Brandon, "Attorney at Law," and signed "Marv Brandon, Esq."  Id.

11       The first letter, dated May 24, 1999, allegedly
12 threatened suspension of plaintiff Zoe Littledove's driver's
13 license, stating:

14       We note that you used your drivers license when you issued
        or passed dishonored check(s). ... The Department of Motor
15      Vehicles is authorized to suspend or revoke the driving
        privileges of any person without preliminary hearing if they
16      have committed an unlawful or fraudulent use of their
        drivers license.
17

18 (Pls.' Ex. 1, Attached to Arons Decl.)  The letter requested
19 payment of $874.90 for returned checks totaling $180.60.  In
20 response, plaintiff Littledove paid defendants $475.00, and
21 defendants agreed to cease their demands.

22       The second and third letters, dated January 19 and
23 February 18, 2000, were addressed to plaintiff Young.  The second
24 letter requested payment of $78.87, which included a $25.00
25 "return charge."  The letter cautioned that "unless this total
26 amount is paid in full within thirty (30) days after the date
27 this letter is received, you will be subject to statutory
28 penalties equal to triple the amount of each check ....  These

2

1  penalties will be in addition to your check amount(s) and service
2  charge(s)."  (Pls.' Ex. 2).

3          The third letter sought $240.48 for the same debt, and
4  added "[y]ou may wish to settle this matter before we seek
5  appropriate relief before a court of proper jurisdiction by a
6  qualified attorney by remitting immediate payment of $248.48 to
7  our offices."  (Pls.' Ex. 3).  On March 21, 2000, plaintiff Young
8  paid $78.87 to defendants.

9          Plaintiffs move to certify the following "umbrella"
10  class: "(i) all persons with addresses in California; (ii) to
11  whom any defendant has sent or will send or has caused or will
12  cause to be sent a letter containing demands or representations
13  which are identical or similar to the demand or representations
14  contained in any of the letters attached as Exhibits 1-3 to the
15  First Amended Complaint; (iii) in connection with attempts to
16  collect debts arising from dishonored checks."  (Mot. at 6:9-15).

17          In addition, plaintiffs propose two subclasses.
18  Subclass A, or "the FDCPA class," is defined as "[t]hose members
19  of the umbrella class whose checks were written for personal,
20  family, or household purposes from whom any defendant demanded or
21  collected money at any time on or after March 20, 1999."  (Mot.
22  at 6:18-19, 7:2-3).  Subclass B, or "the CUBPA class," is defined
23  as "[t]hose members of the umbrella class whose checks were
24  written for any purpose from whom any defendant demanded or
25  collected money at any time on or after March 20, 1996."  (Mot.
26  at 7:4-6).
27  ///
28  ///

3

1    Defendants oppose class certification on the ground
2 that plaintiffs Littledove and Young are not adequate
3 representatives of the putative class.  In the alternative,
4 defendants seek a class definition that closes the class as of
5 August 2000, and identifies three separate subclasses according
6 to the recipients of the three form letters.

7 II. Class Certification

8    To be maintained as a class, the action must meet the
9 four prerequisites under Federal Rule of Civil Procedure 23(a),
10 in addition to meeting the requirements of at least one of the
11 three subdivisions of Federal Rule of Civil Procedure 23(b).  See
12 Fed. R. Civ. P. 23(a),(b).

13    A district court must conduct a rigorous inquiry before
14 certifying a class.  See General Telephone Co. v. Falcon, 457
15 U.S. 147, 161 (1982); East Texas Motor Freight Sys. v. Rodriguez,
16 431 U.S. 395, 403-405 (1977).  A district court has discretion in
17 determining whether the moving party has satisfied each Rule 23
18 requirement.  See Califano v. Yamasaki, 442 U.S. 682, 701 (1979);
19 Montgomery v. Rumsfeld, 572 F.2d 250, 255 (9th Cir. 1978).
20 Petitioners have the burden of demonstrating that they satisfy
21 the class certification prerequisites.  See Mantolete v. Bolger,
22 767 F.2d 1416, 1424 (9th Cir. 1985).

23   A. Rule 23(a)

24    The court must determine if the proposed class
25 satisfies the four prerequisites under Rule 23(a):

26   One or more members of a class may sue or be sued as
    representative parties on behalf of all only if (1) the
27  class is so numerous that joinder of all members is
    impracticable, (2) there are questions of law or fact common
28  to the class, (3) the claims or defenses of the

4

1    representative parties are typical of the claims or defenses
     of the class, and (4) the representative parties will fairly
2    and adequately protect the interests of the class.

3  Fed. R. Civ. P. 23(a). These requirements are more commonly

4  known as numerosity, commonality, typicality, and adequacy of

5  representation. See Fed. R. Civ. P. 23(a); Hanlon v. Chrysler

6  Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

7          1.  Numerosity

8          Rule 23(a)(1) requires a class "so numerous that

9  joinder of all members is impracticable" before the action is

10 class certified. East Texas Motor Freight Sys. v. Rodriguez, 431

11 U.S. 395, 405 (1977) ("Careful attention" to the numerosity

12 requirement is "indispensable."). Courts have established no

13 absolute limitations for a determination of numerosity. See

14 General Telephone Co. v. Falcon, 446 U.S. 318, 330 (1980).

15 However, a class numbering "several thousand" satisfies the

16 numerosity requirement with ease. See Morgan v. Laborers Pension

17 Trust Fund for No. Cal., 81 F.R.D. 669, 676 (N.D. Cal. 1979).

18         Plaintiffs have met the numerosity requirement.

19 Plaintiffs note that defendants have provided a list of putative

20 class members that includes 8,178 separate accounts, and

21 defendants do not object to class certification on numerosity

22 grounds. (Arons Decl. ¶ 6); (Opp'n. at 3:20-24).

23         2.  Commonality

24         Rule 23(a)(2) requires "questions of law or fact common

25 to the class." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit

26 construes commonality liberally. See Hanlon, 150 F.3d at 1019.

27 Commonality is satisfied when there are underlying facts or legal

28 theories common throughout the class even if the common facts

5

1  support different legal theories or common legal theories rest on
2  different facts.  See id.

3       Here, there are common questions of law and fact.
4  Plaintiffs allege that every class member received a form letter
5  from defendants that violated either the FDCPA or the CUBPA.
6  Thus, the underlying legal theory that defendants engaged in
7  unlawful collection practices is common throughout the class.
8  The class members also share common facts because each member has
9  received or will receive a "demand" letter from defendants in
10 connection with a returned check.  Moreover, plaintiffs have
11 limited the proposed class definition to those who have received
12 or will receive letters similar or identical to the three letters
13 attached to the complaint.  Accordingly, plaintiffs have met the
14 commonality requirement.[1]

15       3.  Typicality

16       Rule 23(a)(3) requires that the "claims or defenses of
17 the representative parties are typical of the claims or defenses
18 of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality requires
19 that named plaintiffs have claims "reasonably coextensive with
20 those of absent class members" without the claims having to be
21 "substantially identical."  Hanlon, 150 F.3d at 1020.

22       Plaintiffs' claims are typical of the claims of class
23 members because both are based on defendants' alleged collection
24 of unauthorized fees or the receipt of an unlawful "demand"
25 letter.  Thus, plaintiffs' claims are more than reasonably

26

27       [1]   Defendants dispute that plaintiffs have met the
   commonality requirement, but offer no specific arguments against
28 commonality.

6

1  coextensive with the those of the class, meeting the typicality
2  requirement.

3       4.   Adequacy of Representation

4            a.   Representative Parties

5            Rule 23(a)(4) requires representative parties who "will
6  fairly and adequately protect the interests of the class."  Fed.
7  Rule Civ. P. 23(a)(4); see Hanlon, 150 F.3d at 1020.  A class
8  representative "must be part of the class and possess the same
9  interest and suffer the same injury as the class members."  East
10 Texas Motor Freight v. Rodriguez, 431 U.S. 395, 403 (1977)
11 (internal quotations omitted).

12           Defendants argue that plaintiffs are not adequate
13 representatives of the class because (1) "their counsel appears
14 to be the driving force behind this litigation;" (2) plaintiffs
15 "have conflicting interests with the putative unnamed class
16 members in that they have a vindictive motive for prosecuting
17 this matter;" and (3) plaintiffs "lack any cognizable interest in
18 this matter in light of the offers that [defendant JBC] has
19 extended."  The court considers each argument in turn.

20           First, the court finds no legitimate basis for
21 concluding that plaintiffs' counsel is the "driving force" behind
22 the action.[2]  To support this contention, defendants only point

23

24      [2]  Defendants cite In re Hotel Telephone Charges, 500 F.2d
25 86 (9th Cir. 1974), in which the court denied class certification
   in part because it found the attorneys would be the principal
26 beneficiaries.  Unlike this case, there, the court emphasized
   that "the proposed class action [would likely] consume decades of
27 judicial time," where the "average individual recovery ... [was]
   estimated to be only two dollars," and "most of the named
28 plaintiffs are attorneys acting as counsel for themselves."  Id.,
   500 F.2d at 90-91.

                              7

1  to plaintiffs' rejection of their settlement offers.  However,
2  the complaint seeks relief that has not yet been offered by
3  defendants.  See (Am. Compl. at 10:4) (seeking a declaratory
4  judgment that defendants' specific practices violate the FDCPA).
5  Thus, the court will not question plaintiffs' decision to refuse
6  settlement.

7         Second, plaintiffs' refusal of the two offers does not
8  indicate a vindictive motive that is contrary to the interests of
9  the putative class members.  Defendants' first offer, which is
10  deemed withdrawn pursuant to Rule 68, only included relief for
11  the two named plaintiffs.  Defendants' second offer considers the
12  class, but requires putative class members to present proof of
13  their claims within a specified time limit.  Thus, plaintiffs'
14  refusal of the second offer does not support a finding that their
15  interests are contrary to those of the putative class members.[3]
16  See (Arons Supp. Decl.)(noting that the proposed settlement
17  allowed defendants to retain undistributed settlement funds).
18  ///
19  ///
20  ///
21

22  [3]       In Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1464 (9th
23  Cir. 1995), which is cited by defendants, the Ninth Circuit
   remanded the district court's finding that certain plaintiffs
   were not adequate class representatives on the basis of
24  vindictiveness.  The court noted "there have been no cases in
   this circuit in which a plaintiff has been found to be an
25  inadequate class representative on the basis of vindictiveness."
   Even in situations of "vengeful" plaintiffs, the court emphasized
26  "the vengeance of an aggrieved person more often engenders the
   zealous prosecution essential to a class action than the over-
27  zealous prosecution which may threaten to strangle a class
   action."  Id. (quoting Lim v. Citizens Savings and Loan Ass'n,
28  430 F. Supp. 802, 811 (N.D. Cal. 1976).

8

1          Third, plaintiffs have a cognizable interest in the

2  outcome of the litigation.[4]  In an order filed December 22, 2000,

3  this court rejected defendants' argument that their Rule 68 offer

4  mooted plaintiffs' claims, ruling that plaintiffs "still have a

5  cognizable interest in the outcome of this action."  The fact

6  that defendants have made an additional offer to settle the

7  action does not alter this conclusion.  See Deposit Guar. Nat'l

8  Bank, Jackson, Miss., v. Roper, 445 U.S. 326, 329, 332-33 (1980)

9  (holding that defendant's tender and plaintiffs' refusal of

10 maximum amount that each plaintiff could have recovered did not

11 moot plaintiffs' claims on the merits so long as they retained an

12 economic interest in class certification).

13         In sum, plaintiffs are adequate representatives of the

14 putative class.  Plaintiffs possess the same interests as the

15 putative class in recovering damages and obtaining declaratory

16 and injunctive relief against defendants' alleged collection of

17 unauthorized charges through intimidating form letters.  In

18 addition, plaintiffs have suffered the same injury as the

19 putative class members because they have received the purported

20 "demand" letters and have both paid additional "collection fees."

21              b.  Class Counsel

22         In addition to the adequacy of representative parties,

23 plaintiffs must also show adequate representation by class

24 counsel.  See Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1994)

25

26         [4]   Defendants cite Spencer-Lugo v. Immigration &
   Naturalization Service, 548 F.2d 870 (9th Cir. 1977), for the
27 proposition that plaintiffs have no cognizable interest in the
   litigation once defendants offer to satisfy plaintiffs' "entire
28 demand."  However, in Spencer, the Ninth Circuit emphasized that
   "[t]his case is not a class action."  Spencer, 548 F.2d at 870.

9

1  (adequate representation depends on qualifications of class
2  counsel).  Plaintiffs are represented by Paul Arons and O.
3  Randolph Bragg, who are experienced litigation attorneys.  See
4  (Aron Decl. ¶ 1-5) (listing several years of class action
5  experience under the FDCPA and the CUBPA); (Bragg Decl. ¶ 3-8)
6  (listing extensive experience in consumer law and litigation).
7  Defendants do not question the attorneys' capabilities.

8       B.   Rule 23(b)

9          An action that meets all the prerequisites of Rule
10 23(a) may be maintained as a class action if it also meets the
11 requirements of at least one of the three subdivisions of Rule
12 23(b).  See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163
13 (1974).  Plaintiffs seek certification under Rule 23(b)(2).  See
14 Fed. R. Civ. P. 23(b)(2).  As an alternative, plaintiffs seek
15 certification of a "hybrid class" under Rule 23(b)(2) "for all
16 claims other than actual damages," and Rule 23(b)(3) "for class
17 members who may be entitled to actual damages because they paid
18 fees above the face amount of the check."  (Mot. at 17:18-22).
19 Defendants do not object to class certification under Rule 23(b).

20         Rule 23(b)(2) provides for a class action when "the
21 party opposing the class has acted or refused to act on grounds
22 generally applicable to the class, thereby making appropriate
23 final injunctive relief or corresponding declaratory relief with
24 respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).
25 "Class actions certified under Rule 23(b)(2) are not limited to
26 actions requesting only injunctive relief or declaratory relief,
27 but may include cases that also seek monetary damages."  Probe v.
28 State Teachers' Retirement System, 780 F.2d 776 (9th Cir. 1986)

10

1  (noting that the plaintiffs' request for money damages was
2  "merely incidental to their primary claim for injunctive
3  relief"); see Ballard v. Equifax Check Services, Inc., 186 F.R.D.
4  589, 596 (E.D. Cal. 1999) (certifying a class under Rule 23(b)(2)
5  on "issues of liability, declaratory relief and statutory damages
6  under the FDCPA and injunctive relief and restitution under the
7  CUBPA"); Irwin v. Mascott, 96 F. Supp. 2d 968, 979 (N.D. Cal.
8  1999) (certifying a class seeking statutory and actual damages
9  for violations of the FDCPA and the CUBPA under Rule 23(b)(2)).

10        Plaintiffs seek a declaratory judgment that defendants'
11 practices violate the FDCPA and an injunction enjoining
12 defendants from "adding or attempting to collect the unauthorized
13 charges," and from engaging in conduct that violates the CUBPA.
14 (Am. Compl. at 10). In addition, plaintiffs seek the maximum
15 amount of statutory damages under the FDCPA, 15 U.S.C. §1692k, as
16 well as "actual damages equal to all unauthorized charges
17 collected." (Am. Compl. at 10).

18        Defendants' actions are generally applicable to the
19 entire class because each putative member has received or will
20 receive a computer-generated "demand" letter from JBC.  Thus,
21 injunctive relief and corresponding declaratory relief is
22 appropriate with respect to the class as a whole.

23        Further, plaintiffs' request for monetary damages is
24 secondary to their primary claims for declaratory and injunctive
25 relief.  According to plaintiffs, defendants collected check fees
26 from approximately 12% of the class. (Mot. at 17: 15-16) ("It
27 should be clear, however, that for more than 80% of the class, no
28 substantial monetary relief is available."). Thus, the claims

11

1 for injunctive relief will affect more members and have
2 consequences over a greater period of time than the claims for
3 monetary damages.  See Ballard v. Equifax Check Services, Inc.,
4 186 F.R.D. at 596; Irwin v. Mascott, 96 F. Supp. 2d at 979
5 (noting that statutory damages under the FDCPA, 15 U.S.C. §
6 1692k, are limited to one percent of the defendants' net worth).
7 Accordingly, class certification under Rule 23(b)(2) is proper.

8        Certification under Rule 23(b)(3) for class members who
9 have claims for actual damages is also appropriate.  A class may
10 be maintained under Rule 23(b)(3) if "the court finds that the
11 questions of law or fact common to the members of the class
12 predominate over any questions affecting only individual members,
13 and that a class action is superior to other available methods
14 for the fair and efficient adjudication of the controversy."
15 Fed. R. Civ. P. 23(b)(3).

16        Here, the only individual questions relate to the
17 identification of putative class members and whether they paid
18 "collection fees" to defendants.  Thus, the common questions
19 concerning whether defendants' standardized conduct violates the
20 FDCPA and the CUBPA predominate the action.  See Amchem Prods.,
21 Inc. v. Windsor, 521 U.S. 591, 625 (1997) ("Predominance is a
22 test readily met in certain cases alleging consumer ... fraud.").

23        A class action is also superior to the litigation of
24 the putative members' individual claims.  Not only are most
25 individual consumers unaware of their rights under the FDCPA, but
26 also the size of individual damages claims is "usually so small
27 there is little incentive to sue individually."  Ballard v.
28 Equifax Check Services, Inc., 186 F.R.D. at 600 ("Class action

12

certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'")(quoting <u>Duran v. Credit Bureau of Yuma, Inc.</u>, 93 F.R.D. 607, 610 (D. Ariz. 1982)); see also <u>Amchem Prods., Inc.</u>, 521 U.S. at 625 (1997) (noting that Rule 23(b)(3) was designed to allow the vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court.") (quoting Kaplan, <u>A Prefatory Note</u>, 10 B.C. Ind. & Com. L. Rev. 497, 497 (1969)). Accordingly, class certification under Rule 23(b)(3) for putative members having claims for actual damages is also proper.

C. Class Definition

The court has discretion to create subclasses when appropriate. Fed. R. Civ. P. Rule 23(c)(4)(B).

Plaintiffs propose the creation of two subclasses: "Subclass A" includes members who have claims under the FDCPA, while "Subclass B" includes members who have claims under the CUBPA. See <u>Irwin v. Mascott</u>, 96 F. Supp. 2d at 982 (certifying an umbrella class and subclasses identical to those proposed by plaintiffs in this case). Defendants propose an alternative class definition that identifies six subclasses, including an FDCPA class and a CUBPA class for each of the three collection letters.

Plaintiffs argue that the creation of multiple subclasses as proposed by defendants is unnecessary and would create confusion because many members received two or more of the

13

1  letters.[5]  The court agrees.

2      Defendants also request a class cut-off date of August
3  2000, when JBC claims it ceased collection activity in
4  California.  According to defendants, the cut-off date would
5  alleviate (1) discovery concerns regarding counsel's privileged
6  advice to defendants during the litigation on subsequent changes
7  to JBC's collection letters and (2) notice problems that arise
8  when new members enter the class.  If it is true that defendants
9  have ceased their collection activity as of August 2000, then the
10  concerns raised by defendants will not be implicated.  Such
11  concerns could only be raised in the event that defendants resume
12  their collection activity in California, in which case the court
13  should not, and will not impose a cut-off date.[6]

14      IT IS THEREFORE ORDERED that plaintiffs' motion for
15  class certification be, and the same hereby is, GRANTED.  The
16  court certifies the following umbrella class: (i) all persons
17  with addresses in California; (ii) to whom any defendant has sent
18  or will send or has caused or will cause to be sent a letter
19  containing demands or representations which are identical or
20  similar to the demand or representations contained in any of the
21  letters attached as Exhibits 1-3 to the First Amended Complaint;
22  (iii) in connection with attempts to collect debts arising from
23  dishonored checks.

24

25      [5]  For example, plaintiffs claim that some members would
   qualify for all six subclasses because they received all three
26  letters within one year prior to the filing of this law suit.
   Other members may qualify for up to four subclasses.

27      [6]  During oral argument, counsel for defendants suggested
   that whether JBC will continue collection activity in California
28  is "up in the air."

14

1          The court further certifies the following subclasses:
2   (A) Those members of the umbrella class whose checks were written
3   for personal, family, or household purposes from whom any
4   defendant demanded or collected money at any time on or after
5   March 20, 1999; and (B) Those members of the umbrella class whose
6   checks were written for any purpose from whom any defendant
7   demanded or collected money at any time on or after March 20,
8   1996.

9          The named plaintiffs Zoe Littledove and Salina Young
10  shall represent the umbrella class and both subclasses, with Paul
11  Arons and O. Randolph Bragg serving as class counsel.  Class
12  counsel shall, on or before a date ninety days from the date of
13  this Order, cause to be mailed in the name of the clerk by first
14  class mail, postage prepaid, to all class members who can be
15  identified through reasonable efforts, a notice meeting the
16  requirements of Federal Rule of Civil Procedure 23(c)(2).  Class
17  members may exclude themselves from the class by filing by a date
18  to be determined appropriate written indication of their request
19  for exclusion in a post office box designated by class counsel,
20  from which class counsel shall receive and tabulate requests for
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

15

1 | exclusion.  Class counsel shall file with the clerk, by a date to
2 | be determined, an affidavit identifying the persons to whom
3 | notice has been mailed and who have not timely requested
4 | exclusion.
5 |          IT IS SO ORDERED.
6 | DATED: January 10, 2001

_William B. Shubb_

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

16

United States District Court
for the
Eastern District of California
January 11, 2001


* * CERTIFICATE OF SERVICE * *


2:00-cv-00586


Littledove

    v.

JBC and Associates

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  January 11, 2001, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.


        Paul Arons                          SH/WBS
        Law Offices of Paul Arons
        1616 West Street
        Redding, CA  96001

        O Randolph Bragg
        Law Offices of O Randolph Bragg
        25 E Washington Street
        Suite 900
        Chicago, IL  60602

        Mark Ewell Ellis
        Murphy Pearson Bradley and Feeney
        PO Box 659000
        701 University Avenue
        Suite 150
        Sacramento, CA  95865-9000

        June Dittus Coleman
        Murphy Pearson Bradley and Feeney
        PO Box 659000
        701 University Avenue
        Suite 150
        Sacramento, CA  95865-9000


                                    Jack L. Wagner, Clerk


                                    by: Deputy Clerk